[No. 2031-1.   Division One.   March 18, 1974.]

SPARKMAN & McLEAN INCOME FUND, *Appellant,* v. FELIX A. WALD *et al., Respondents.*

*Montgomery, Purdue, Blankinship & Austin* and *Gale D. Barbee* and *Lynn O. Hurst,* for appellant.

*Gerald F. Collier, Terry L. Kukuk,* and *Lee R. McNair,* for respondents.

FARRIS, J.—Sparkman & McLean Income Fund, assignee of two promissory notes which the Walds executed to Retirement Income Corporation, brought suit on the notes. The Walds counterclaimed alleging usury. Sparkman Fund appeals from judgment for the Walds on their counterclaim.

In July 1965, the Walds approached Sparkman & McLean Company (which the trial court found acted as agent of Retirement Income Corporation, the lender) to obtain a loan for the purpose of purchasing 2,800 acres of land near Christmas Valley, Oregon. On July 23, 1965, the Walds executed a promissory note in the amount of $100,000 to Retirement Income Corporation for 2 years at 8 percent per year. The note was secured by mortgages on certain real property in which the Walds held an interest, located in King and Snohomish Counties, Washington, and the Christmas Valley, Oregon, property.

When the Walds went to the offices of Sparkman & McLean Company to close the loan, they were advised that a portion of the proceeds was to be deducted for the payment of loan fees, commissions, and discounts: $4,000 to Sparkman & McLean Company and $4,000 to Retirement Income Corporation. In order to obtain sufficient net proceeds to accomplish the purpose of the loan, the Walds executed an additional promissory note in the amount of $8,000 to Retirement Income Corporation for 2 years at 6 percent per year, secured by second mortgages on all of the properties which had been mortgaged as security for the $100,000 note. Net proceeds of $100,000 were then disbursed to the Walds.

Sometime in 1968, Retirement Income Corporation as-

signed the loans and the mortgages securing them to Sparkman Fund. The trial court sitting without a jury found as a fact that Sparkman & McLean Company was the agent of Sparkman Fund at the time of the assignment. In December 1970, Sparkman Fund, along with Sparkman & McLean Company and Retirement Income Corporation went into receivership. The Walds made payments on principal and interest until April 15, 1971, at which time they made their last payment. A balance remained due on that date.

Sparkman Fund, through its receiver, brought this action to recover the outstanding balance on the loans. The Walds alleged that the loans were usurious under RCW 19.52.020 and counterclaimed under 19.52.030 for damages. The trial court held for the Walds and entered judgment on their counterclaim in the amount of $100,645.47 plus $18,000 attorney fees. The trial court also ordered that Sparkman Fund's mortgage interest on the Wald's real property in King and Snohomish Counties, Washington and Christmas Valley, Oregon, be extinguished. This appeal followed.

RCW 19.52.080 provides:

> Corporations, Massachusetts trusts, associations, limited partnerships, and persons engaged in the business of lending money or the development or improvement of real estate in the state of Washington may not plead the defense of usury nor maintain any action thereon: *Provided, however,* That this section shall apply only to a transaction which involves an amount in excess of one hundred thousand dollars.

The trial court found that the Walds were in the business of developing or improving real estate within the meaning of the above statute, but that the transaction at issue was not in excess of $100,000 so that the statute did not bar the usury defense and counterclaim. To reach this decision, the trial court found that the two loans constituted a single transaction and that the $8,000 loan represented interest rather than compensation for services performed for the Walds; therefore, the transaction totaled $100,000 instead of $108,000.

■■ Sparkman Fund argues that the trial court erred in failing to include the $8,000 loan in the total amount of the transaction. We disagree; only the money actually received by the borrower is relevant in allegedly usurious transactions. A lender may not evade the usury laws by executing a note which is nonusurious on its face while actually disbursing less than the principal amount of the note. *Financial Commerce, Inc. v. McLean,* 73 Wn.2d 52, 55, 435 P.2d 932 (1968); *Clausing v. Virginia Lee Homes, Inc.,* 62 Wn.2d 771, 775, 384 P.2d 644 (1963). Whether the $8,000 note represented interest or legitimate costs of the loan was a question of fact which the trial court resolved upon substantial evidence.

■ The legislature exempted certain high risk, high return transactions from the strictures of the usury laws in 1970. This followed its 1967 creation of affirmative relief as a penalty for usury in RCW 19.52.030. The $100,000 transaction exemption must be strictly construed against the lender who is gaining the benefit of a narrow exemption from the usury laws. To expand "transaction" to include sums which in effect are interest is broadening the ordinary meaning of the term inconsistent with such a narrow exemption.

A transaction involving an amount in excess of $100,000 could nevertheless involve two notes, each less than $100,000, but having a sufficient degree of relation. The amount of a "transaction" therefore is not to be defined by the principal amount of a note.

■ Sparkman Fund argues secondly that the trial court incorrectly characterized as interest the $4,000 fee which the Walds paid to Sparkman & McLean Company. Services performed for a borrower reasonably worth the amount the borrower agreed to and did pay are not to be characterized as interest. *Testera v. Richardson,* 77 Wash. 377, 379, 137 P. 998 (1914). However, the trial court here found that the $4,000 fee was not compensation for any services performed other than for making the loan and for the use of the money. Though evidence on the issue was disputed, the

record includes testimony of C. O. Causey, an expert in the field of mortgage lending, that Sparkman & McLean Company performed no services other than those for the benefit of the lender which are normally incident to such a transaction. In addition, there was no evidence that the Walds authorized Sparkman & McLean Company to engage in any of the activities for which the $4,000 fee was charged. The trial court's characterization as interest of the $4,000 fee is therefore supported by substantial evidence; we will not disturb it on apppeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Third, Sparkman Fund argues that it was a holder in due course and that the Walds therefore were barred under RCW 62A.3-305[1] from asserting the usury defense. The trial court found that Sparkman & McLean Company was the agent of Retirement Income Corporation at the time of the original loan transaction and was the agent of Sparkman Fund at the time of Sparkman Fund's purchase of the notes. The trial court concluded that Sparkman Fund took the notes with actual notice of their usurious nature and therefore could not be a holder in due course.

RCW 62A.3-302 provides:

(1) A holder in due course is a holder who takes the instrument

. . .

(c) without notice that it is overdue or has been dis-

---

[1]"To the extent that a holder is a holder in due course he takes the instrument free from

"(1) all claims to it on the part of any person; and

"(2) all defenses of any party to the instrument with whom the holder has not dealt except

"(a) infancy, to the extent that it is a defense to a simple contract; and

"(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

"(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

"(d) discharge in insolvency proceedings; and

"(e) any other discharge of which the holder has notice when he takes the instrument."

honored or of any defense against or claim to it on the part of any person.

RCW 62A.1-201(25) provides that a "person," which term under RCW 62A.1-201(28) and (30) includes corporations,

has "notice" of a fact when (a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this Title.

In general, the knowledge of an agent will be imputed to his principal. *E.g., L.J. Dowell, Inc. v. United Pac. Cas. Ins. Co.*, 191 Wash. 666, 681, 72 P.2d 296 (1937). However, where the agent has forgotten whatever information he may once have known, this imputation of knowledge to the principal is not applicable. *Meyers v. Gerhart*, 54 Wash. 657, 103 P. 1114 (1909). There is substantial evidence in the record to support the trial court's finding that Sparkman Fund took the notes with actual notice of the usury by Sparkman & McLean Company, its agent. Robert Price was employed by Sparkman & McLean Company when the notes were executed and understood the details of the transaction at that time. In about August 1967, Price's memory was refreshed when Wald negotiated for a lower rate of interest. In 1968, Price approved the purchase of the notes by Sparkman Fund. The trial court could properly infer from this evidence that Sparkman Fund took with actual knowledge of the underlying transaction. A factual determination supported by substantial evidence will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc., supra.*

Fourth, Sparkman Fund argues that even assuming that the transaction was usurious, no affirmative relief should have been granted.

In 1967, the usury laws were amended to permit affirmative relief against lenders under RCW 19.52.030.[2] The 1967 amendatory act, which included provision for affirmative relief, is not retroactive:

The provisions of this 1967 amendatory act shall not apply to transactions entered into prior to the effective date hereof.

Laws of 1967, 1st Ex. Sess., ch. 23, § 9, p. 1513. Since the notes at issue were executed in 1965, Sparkman Fund argues that no affirmative relief is permissible.

Sparkman Fund failed to raise this argument in the trial court. Ordinarily, failure to raise an issue at trial precludes its consideration on appeal. *Lee v. Cloes,* 80 Wn.2d 783, 784, 498 P.2d 323 (1972). However, CAROA 43 provides:

[T]he objection that the superior court had no jurisdiction of the cause or that the complaint does not state sufficient facts to constitute a cause of action, or that the court of appeals has no jurisdiction of the appeal, may be taken at any time.

Interpreting Rem. Comp. Stat. § 263 (which contained substantially the same language as CAROA 43), the Supreme Court held in *Hamilton v. Johnson,* 137 Wash. 92, 96, 241 P. 672 (1925), that

if the complaint shows upon its face that the plaintiff has no cause of action and under no circumstances can have a cause of action, the court will stay the action at the earliest time the matter is brought to its attention.

*See also State ex rel. Everett Trust & Sav. Bank v. Pacific*

---

[2]"(1) If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount he has paid under the contract exceeds the amount to which the creditor is entitled: . . ."

*Waxed Paper Co.,* 22 Wn.2d 844, 849, 157 P.2d 707, 159 A.L.R. 297 (1945); *State ex rel. Walton v. Superior Court,* 18 Wn.2d 810, 817-18, 140 P.2d 554 (1943). Sparkman Fund may therefore raise this issue for the first time on appeal.

The Walds argue that the Sparkman Fund's receiver re-affirmed the transaction by accepting loan payments up to April 15, 1971, and by bringing this action in October 1971, long after the enactment of RCW 19.52.030. That the Wald's prayer for relief under RCW 19.52.030 was a counterclaim rather than an initial complaint is not determinative of the issue. In general, the validity of a counterclaim is deter-mined by whether it would constitute a cause of action by defendant against plaintiff if plaintiff had not sued. *Nichols v. Olympia Veneer Co.,* 145 Wash. 59, 60, 258 P. 1028 (1927). Moreover, the 1967 amendment of RCW 19.52.030 explicitly applies only to transactions "entered into" after its effective date of July 30, 1967. The notes here at issue were executed in 1965. It was error to enter judgment for the Walds on their counterclaim.

■ Finally, Sparkman Fund argues that the trial court lacked jurisdiction to extinguish mortgages on the Wald's real property outside King County. The King County court, once having properly obtained jurisdiction of the subject matter of the action, as it did over the notes which form the center of the controversy, had the power to affect the title to real property outside King County by extinguishing the Snohomish County mortgages. *See State ex rel. Owen v. Superior Court,* 110 Wash. 49, 187 P. 708 (1920); *Commercial Nat'l Bank v. Johnson,* 16 Wash. 536, 48 P. 267 (1897).

■ The trial court's attempt to directly affect the title to Oregon real property by extinguishing the Oregon mort-gages was, however, of no force or effect. Courts of one state cannot directly affect the title to real property beyond that state's territorial limits. *Brown v. Brown,* 46 Wn.2d 370, 372, 281 P.2d 850 (1955).

The action is affirmed in part and reversed in part. We

remand to the trial court for reconsideration of the appropriate remedy under the usury laws extant at the time of the transaction in 1965.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied June 19, 1974.