[No. 6453–7–II.  Division Two.  November 20, 1984.]

AETNA FINANCE COMPANY, *Respondent,* V. RUTH DARWIN, *Appellant.*

*Robert L. Beale,* for appellant.

*John Woodbery,* for respondent.

REED, J.—Ruth Ragsdale (formerly and herein referred to as Ruth Darwin) appeals from a judgment of $42,439.56 in favor of Aetna Finance Co. (Aetna). Aetna loaned $51,000 to Jerald and Ruth Darwin on December 4, 1979. The Darwins requested a loan to purchase a commercial truck and trailer costing $39,500. At the time of the loan transaction, RCW 19.52.020 limited the interest rate on loans to 12 percent.[1] Loan transactions that exceed $50,000 and are made exclusively for commercial or business pur-

---

[1]RCW 19.52.020 provided:

"Highest rate permissible—Setup charges. Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract shall be legal, and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or things in action than twelve percent per annum: *Provided,* That in any loan of money in which the funds advanced do not exceed the sum of five hundred dollars, a setup charge may be charged and collected by the lender, and such setup charge shall not be considered interest hereunder: *Provided further,* That such setup charge does not exceed four percent of the amount of funds advanced, or fifteen dollars, whichever is the lesser, except that on loans of under one hundred dollars a minimum not exceeding four dollars may be so charged."

poses were exempted.[2] RCW 19.52.080. Aetna wished to limit its loans to those that would qualify for the exemption, and therefore would only make loans that exceeded $50,000. Consequently, Aetna would not loan the Darwins $39,500; it did agree to loan them $51,000, at 20.58 percent interest. As a condition to making the loan, Aetna required the Darwins to extinguish from the loan proceeds two security interests in property that secured the loan, a $2,302.26 second mortgage on their home, and a $2,392.81 loan secured by the Darwins' household goods. Aetna distributed $39,500 in payment for the truck, $121.54 for title insurance, and $11.50 for recording fees, and retained $1,000 as a "loan funding fee." Aetna disbursed to the Darwins $5,671.89, the balance of the $51,000 loan, with no restrictions as to its use. The Darwins deposited the $5,671.89 in a checking account separate from their personal checking account, but used the proceeds for both business and personal expenditures.

Jerald Darwin died at a truck stop on December 19, 1979, during his first hauling trip. Aetna commenced this lawsuit on January 23, 1981, after Mrs. Darwin defaulted on the loan. Mrs. Darwin counterclaimed, alleging that Aetna's loan violated RCW 19.52, the usury statute. After a bench trial, the court rejected Mrs. Darwin's counterclaim. We reverse.

Aetna's 20.58 percent loan violates the usury statute because each of the elements of usury appears on the face of the loan contract: (1) a loan or forbearance, express or

---

[2]RCW 19.52.080 provided:

"Defense of usury or maintaining action thereon prohibited if transaction exclusively commercial or business—Exceptions. Corporations, Massachusetts trusts, associations, trusts, general partnerships, joint ventures, limited partnerships, and persons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was exclusively for commercial or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount, or to a commercial or business transaction not exceeding fifty thousand dollars.

"Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes."

implied, of money or other negotiable tender; (2) an understanding between the parties that the principal must be repaid; (3) the exaction of a greater rate of interest than is allowed by law; and (4) an intention to enter into the transaction. *Liebergesell v. Evans,* 93 Wn.2d 881, 887, 613 P.2d 1170 (1980); *Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d 571, 576, 573 P.2d 1316 (1978). Aetna asserts that the loan is not usurious because it qualifies for the exemption provided in RCW 19.52.080, while Mrs. Darwin counters that the loan transaction was neither exclusively for business purposes, nor in excess of $50,000, and therefore did not qualify for the exemption.

Before the Legislature amended RCW 19.52.080 in 1981,[3] that statute provided a very limited exemption from the restrictions of Washington's usury law. Previous legislation had dramatically increased borrowers' protections and placed rigid restrictions on lenders. *See Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. 765, 768, 520 P.2d 173 (1974); Laws of 1967, 1st Ex. Sess., ch. 23, §§ 2–8. RCW 19.52.080 was enacted in 1969 to add to the strict usury law a very limited exemption for certain large, high risk transactions. Laws of 1969, 1st Ex. Sess., ch. 142, § 1, p. 1039; *Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 768. In 1970 and 1975, the exemption was expanded to exempt from the usury law certain large commercial loans to individuals. Laws of 1975, 1st Ex. Sess., ch. 180, § 1, p. 616; Laws of 1970, 1st Ex. Sess., ch. 97, § 2, p. 762. After the 1975 amendment, the exemption was limited to transactions in excess of $50,000, made *exclusively*[4] for business purposes.

◼ Given this background, we believe that when a loan is usurious on its face, as in the present case, the burden is upon the lender to prove that its loan qualifies for the nar-

---

[3]Laws of 1981, ch. 78, § 2, p. 343.

[4]The Legislature rejected an earlier version of the bill that further would have expanded the exemption by exempting transactions that were only "primarily" for business purposes. Senate Journal, 44th Legislature (1975), at 858.

row transaction exemption. *See Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d at 576; *Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 768. Contrary to Aetna's argument, the absence of an exemption under RCW 19.52-.080 is not an element of usury. Aetna has not met its burden of proof.

Aetna argues that under the "2–hypotheses rule," the burden should be upon Mrs. Darwin to prove that Aetna's loan was not within the transaction exemption of RCW 19.52.080. Under the 2–hypotheses rule, "'[i]n determining whether or not a given contract for the payment of money is usurious, it is clearly the rule that, where the contract is susceptible of two constructions, the one lawful and the other unlawful, the former will be adopted.'" *Rouse v. Peoples Leasing Co.,* 96 Wn.2d 722, 725–26, 638 P.2d 1245 (1982), quoting *German Sav., Bldg. & Loan Ass'n v. Leavens,* 89 Wash. 78, 82–83, 153 P. 1092 (1916). The 2–hypotheses rule is a rule of construction—based upon a presumption that the parties to the contract intended to keep within the law—that guides a court in ascertaining the intended meaning of contract terms when that meaning is not clear on the face of the contract. *See German Sav., Bldg. & Loan Ass'n v. Leavens,* 89 Wash. at 82–83. However, the 2–hypotheses rule does not apply when a loan contract clearly is usurious on its face, and the only question is whether the facts of the case show that the loan is exempt from the otherwise applicable usury law. *See Rouse v. Peoples Leasing Co.,* 96 Wn.2d at 725; *Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d at 576. We hold that Aetna's loan to the Darwins was not exempt from the usury law both because the loan was not in excess of $50,000, and because it was not exclusively for business or commercial purposes.

■ First, the loan transaction in this case did not exceed $50,000. The amount of the "transaction" referred to in RCW 19.52.080 is the principal amount of the loan, and is defined by the substance of the loan agreement, not by its form. *See Rouse v. Peoples Leasing Co.,* 96 Wn.2d at 726;

*Busk v. Hoard,* 65 Wn.2d 126, 127–28, 396 P.2d 171 (1964); *Hafer v. Spaeth,* 22 Wn.2d 378, 382, 156 P.2d 408 (1945), *overruled on other grounds in Whitaker v. Spiegel, Inc.,* 95 Wn.2d 661, 671, 623 P.2d 1147, 637 P.2d 235 (1981); *Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 768. A charge for interest is not part of the loan transaction, regardless of what the parties may call the charge. *Sparkman & McLean Income Fund v. Wald, supra.* Charges for making a loan and for the use of money are interest; charges are not interest if they are for services actually provided by the lender, reasonably worth the price charged, and for which the borrower agreed to pay. *See Testera v. Richardson,* 77 Wash. 377, 379, 137 P. 998 (1914); *Sparkman & McLean Income Fund v. Wald, supra.* Under RCW 19.52.020, a setup charge is exempt from characterization as interest only if it is made in connection with a loan of $500 or less. *See also Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 769. The trial judge found that Aetna's loan funding fee was for "services provided by Aetna Finance Company for which it was paid $1,000.00 by the defendants, which was a legitimate cost of the loan." The judge described these services as "preparing the loan documents, arranging and paying off the [loans], . . . arranging the payment of the truck, recording fees and loan disbursement, . . ." Although Aetna's charges for these administrative services may have been "legitimate costs of the loan," they are setup charges normally incidental to making a loan, which must be treated as interest.[5] Thus, Aetna's $1,000 loan funding fee was a charge for interest, and therefore was not part of the transaction.

---

[5]By contrast, Aetna's charges to the Darwins for title insurance and recording fees were for services provided by the lender, and were not setup charges. *See, e.g., Busk v. Hoard,* 65 Wn.2d at 130–35. Although not dispositive, the fact that these services were obtained by payment to a third party is evidence the services were actually provided to the borrower and were reasonably worth the amount charged. *See Kyser v. T.M. Bragg & Sons,* 228 Ark. 578, 309 S.W.2d 198, 200 (1958); *Lyle v. Tri–County Fed. Sav. & Loan Ass'n,* 33 Md. App. 46, 363 A.2d 642, 644–45 (1976).

Without this $1,000 loan funding fee, the transaction did not exceed $50,000.[6] *Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 768. Therefore, RCW 19.52.080 does not shield Aetna from Mrs. Darwin's counterclaim.

■ We hold also that Aetna's loan did not qualify for the RCW 19.52.080 exemption because the loan was not *exclusively* for commercial or business purposes. In characterizing the purpose of the loan, we look for evidence of the use to which the borrower intended to put the loan proceeds at the inception of the loan contract. *See National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 410, 415, 495 P.2d 332 (1972). Characterizing the purpose of the loan according to the specific use to which the borrower intended to put the loan proceeds is consistent with the Legislature's purpose in enacting the usury law, *i.e.,* of preventing individuals from incurring debts, at high interest rates, for nonbusiness purposes. *See* RCW 19.52.005;[7] RCW 19.52.080; *Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965). The borrower's intended use for the loan proceeds must be characterized according to the manifestations of intent, if any, that the borrower made to the lender at the time the parties entered into the loan contract. *See National Bank of Commerce v. Thomsen,* 80 Wn.2d at 410,

---

[6]Aetna argues that the loan funding fee should be reduced to $996 because, after litigation with the Darwins began, it disbursed $4 for a recording fee for which, the trial judge found, it could have charged the Darwins. We are not persuaded that this unilateral reclassification, made long after the loan transaction, which is the time for determining the amount and purpose of the loan, salvages Aetna's case. The Darwins never agreed to pay the recording fee and, even if Aetna could have billed the Darwins for the fee, the disbursement does not in any way affect the original loan transaction. *See Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. at 769.

[7]RCW 19.52.005 provides:
"Declaration of policy. RCW 19.52.005, 19.52.020, 19.52.030, 19.52.032, 19.52-.034, and 19.52.036 are enacted in order to protect the residents of this state from debts bearing burdensome interest rates; and in order to better effect the policy of this state to use this state's policies and courts to govern the affairs of our residents and the state; and in recognition of the duty to protect our citizens from oppression generally."

415; *Janzen v. Phillips,* 73 Wn.2d 174, 178, 437 P.2d 189 (1968). However, a borrower's acquiescence in a scheme to avoid the usury law does not make the transaction qualify for the exemption in RCW 19.52.080. *Cf. Rouse v. Peoples Leasing Co.,* 96 Wn.2d at 724–27. The lender's purpose for the loan, which almost always is a business purpose, is irrelevant.

The Darwins challenged the trial judge's finding "[t]hat Mr. and Mrs. Darwin and Aetna Finance Company did at the time of the December 4, 1979, loan, intend to borrow and loan for the purchase of a truck, establish a trucking business and provide working capital for said business; that no personal or consumer purpose was shown by the evidence." The trial judge's oral opinion makes clear that he found that the Darwins had a commercial or business purpose for acquiring all of the loan proceeds, including the $5,671.89. However, we do not find in the record sufficient evidence to support this finding. Aetna's witness, a former Aetna employee, admitted that the $5,671.89 cash loan "was the amount of the proceeds that was left over after the purchase of the truck and the two prior liens that had to be paid off," determined "solely . . . so Aetna Finance arrives at somewhere in the neighborhood of $50,000.00 . . . ." Although Darwins acknowledged they probably could use some cash for unexpected expenses, they anticipated the proceeds from the truck's first trip would cover those. They did not request working capital. Aetna did not require segregation of the excess loan proceeds nor that they be used solely for business purposes. This evidence shows no more than Darwins' acquiescence to a loan of additional money to comply with Aetna's loan requirements. This is not sufficient evidence to support the finding that the Darwins borrowed the cash *exclusively* for commercial or business purposes, particularly in light of the Legislature's intent to restrict the exemption in RCW 19.52.080. *See Smith v. Shannon,* 100 Wn.2d 26, 35–36, 666 P.2d 351 (1983).

Having failed to establish that its loan was exclu-

sively for commercial or business purposes, Aetna did not meet its burden of proof to qualify for the exemption.[8] Accordingly, we reverse that portion of the trial court's judgment that denied Mrs. Darwin's counterclaim. Because Mrs. Darwin should have prevailed on her counterclaim, it was error for the trial court to award Aetna its attorney's fees and costs. Generally a "prevailing party" may recover attorney's fees when the parties' agreement provides such recovery for one or more of the parties. *See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 540, 585 P.2d 71 (1978); RCW 4.84.010, .020, .330. Here, Aetna's deed of trust provided that the borrowers would "pay all costs and expenses, including . . . attorney's fees . . . in any suit brought by [Aetna] . . . to foreclose this Deed of Trust." In addition, a "prevailing party" as defined by RCW 4.84.330 may recover "costs." RCW 4.84.030, .060, .330. Such costs are described in RCW 4.84.010 and .080. However, under RCW 19.52-.030(1), a lender who sues to enforce a usurious loan contract may not recover attorney's fees or costs, notwithstanding contrary contract terms. That statute reads as follows: "[T]he creditor shall *only* be entitled to the principal, less [certain penalties, costs, and the debtor's attorney's fees] . . ." (Italics ours.) *See Clausing v. Virginia Lee*

---

[8]Mrs. Darwin also argues that the loan proceeds used to extinguish the loan from Metropolitan Mortgage Co. and Associated Finance Co. were not exclusively for a commercial or business purpose. Aetna required the Darwins to borrow the money and to pay off the loans to secure a second priority security position in the Darwins' residence and a first priority position in their household goods. The Darwins extinguished the two loans solely to comply with one of Aetna's loan conditions. We have serious doubts that Aetna proved any business reason for requiring the Darwins to borrow money to extinguish the senior security interests in the Darwins' property. Aetna's apparent purpose was to increase the size of the loan. Such changes in the form of loan proceeds are open to abuse, and therefore should be closely scrutinized by a trial court to ensure that the security arrangements are not merely devices to circumvent the usury laws. *See Busk v. Hoard,* 65 Wn.2d at 127–28. However, Mrs. Darwin did not challenge the trial court's finding that "payment of the . . . [loans was] for the legitimate business purpose of providing the collateral promised by the borrower." This unchallenged finding is a verity on appeal. *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.,* 96 Wn.2d 806, 814, 638 P.2d 1220 (1982).

*Homes, Inc.,* 62 Wn.2d 771, 776, 384 P.2d 644 (1963); *Libert v. Unfried,* 47 Wash. 186, 193, 91 P. 776 (1907). *See also Liebergesell v. Evans,* 23 Wn. App. 357, 365–66, 597 P.2d 908, *rev'd on other grounds,* 93 Wn.2d 881, 613 P.2d 1170 (1980). Regardless of other statutory provisions or those contained in the loan agreement, Mrs. Darwin's request for the remedy under RCW 19.52.030(1) strips Aetna of the latter award. Therefore, Aetna must bear its own costs and attorney's fees, and in addition must pay to Mrs. Darwin the amounts due her under RCW 19.52.030.

The cause is remanded to the trial court for entry of a corrected judgment awarding Mrs. Darwin the penalties, costs, and attorney's fees due her under RCW 19.52.030. *See Clausing v. Virginia Lee Homes, Inc., supra; Libert v. Unfried, supra.*

PETRICH, C.J., and PETRIE, J., concur.

Reconsideration denied December 17, 1984.

Review denied by Supreme Court February 15, 1985.