# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CREER LEGAL, d/b/a for attorney,
Erica Krikorian, real party in interest,

Appellant,

v.

MONROE SCHOOL DISTRICT, a
political subdivision of the State of
Washington,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 76814-0-I

PUBLISHED OPINION

FILED: August 13, 2018

DWYER, J. — Over the course of her representation of Erica Miller,

attorney Erica Krikorian made Public Records Act[1] (PRA) requests to the Monroe

School District (the District). Krikorian then negotiated a settlement with the

District in which Miller released any potential PRA claims. Krikorian, asserting

that the PRA claims were hers, later filed suit against the District for an alleged

denial of her opportunity to inspect requested records. The trial court granted

summary judgment to the District on the theory that Krikorian lacked standing to

prosecute this action. We affirm, holding that Krikorian, as Miller's agent, did not

own the cause of action and could not prosecute it once it was released by Miller.

---

[1] Ch. 42.56 RCW.

I

In December 2014, Erica Miller filed suit in the United States District Court against the District, alleging civil rights violations related to the seclusion and restraint of her autistic child. She was represented by Erica Krikorian of Creer Legal (Krikorian) and Brian Krikorian.[2] In the course of litigation, Krikorian sent the District two PRA requests on behalf of Miller. Krikorian e-mailed the first request on February 12, 2015. The District produced records to Miller's attorneys in installments. On April 27, 2015, Krikorian sent an e-mail to the District both requesting additional records and following up on the first request. Krikorian threatened to file a lawsuit under the PRA based on the District's failure to produce records responsive to the first request, noting that the records were necessary for depositions in the civil rights litigation. The District produced records to Miller's attorneys in installments.

On June 4, 2015, Miller filed a motion to show cause in federal district court, alleging that the District wrongfully withheld records from her under the PRA. The district court denied the motion.

On January 13, 2016, Miller filed another motion to show cause for a PRA violation. She requested that she be awarded $55,250 in attorney fees, noting that in the time since the original motion, "another 75 hours of attorney time has been invested." The court denied Miller's motion, but the District was ordered to produce any remaining responsive documents.

---

[2] We refer to plaintiff Erica Krikorian, doing business as Creer Legal, as "Krikorian."

Miller's suit was tried in federal district court. The jury returned a defense verdict. Miller was ordered to pay $17,224.07 in costs to the District. Thereafter, she and the District entered into a settlement agreement in which the District agreed to waive execution on the cost bill in consideration for Miller waiving her right to appeal and releasing all claims, including those under the PRA. In so doing, Miller and the District agreed to

> hereby release, acquit and forever discharge each other, their employees, agents, board members, attorneys in this litigation, and assigns of and from any and all claims, demands, actions, causes of action, or damages of whatever nature, known or unknown, to the date of the settlement, including, but not limited to . . . claims brought pursuant to the Washington Public Records Act. . . . PLAINTIFF and DEFENDANTS individually *represent and warrant that they individually are the sole owner of all such claims*, demands, actions, causes of action, or damages released and discharged hereunder.

(Emphasis added.)

On October 25, 2016, Krikorian filed a PRA complaint in superior court against the District alleging violations related to the two requests made in the course of representing Miller. Both parties filed motions for summary judgment. On April 5, 2017, the trial court granted the District's motion for summary judgment, dismissing Krikorian's PRA claims on the basis that she lacked standing. The trial court did not rule on Krikorian's motion. Krikorian appeals.

II

This case presents two related questions. First, does the same alleged PRA violation support more than one cause of action? Second, who is entitled to prosecute a PRA cause of action?

3

A

We review summary judgment de novo. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). We engage in the same inquiry as the trial court and consider the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Hertog, 138 Wn.2d at 275.

"The PRA 'is a strongly worded mandate for broad disclosure of public records.'" Yakima County v. Yakima Herald–Republic, 170 Wn.2d 775, 791, 246 P.3d 768 (2011) (internal quotation marks omitted) (quoting Soter v. Cowles Publ'g Co., 162 Wn.2d 716, 731, 174 P.3d 60 (2007)). Under the PRA, all state and local agencies must promptly disclose any public record on request unless the record falls under a statutory exemption. RCW 42.56.520, .550(1); Wood v. Lowe, 102 Wn. App. 872, 876, 10 P.3d 494 (2000). "Agencies shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request." RCW 42.56.080(2).

B

Neither party in this case takes a position on our first inquiry, whether the same alleged PRA violation supports more than one cause of action. But we read the Act to provide for a single cause of action arising from an alleged PRA denial, regardless of how many individuals were involved in making the request.

If the agency fails to disclose records, then

> [u]pon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records.

RCW 42.56.550(1). This provision authorizes any person to file "the motion" if that person was "denied an opportunity" to inspect requested records. This reference to "the motion" establishes the cause of action for a PRA violation. The statute then ties the cause of action to the alleged violation: "denied an opportunity to inspect." The PRA references a cause of action in the singular— *the* motion—and links that singular cause of action to the alleged denial while also linking the denial to the request. In so doing, RCW 42.56.550 provides that there is but one cause of action per alleged denial under the PRA.

C

Having established that the denial of an opportunity to inspect records gives rise to a single cause of action under the PRA, we turn to this question: who is authorized to bring that action? Both parties in this case argue that this is a question of standing. While this is an understandable viewpoint, given the existing appellate court opinions on the matter, a standing framework is not useful here. The question of ownership of the cause of action is the more appropriate inquiry. In this case, the question of ownership is resolved by resort to the law of agency.

The District's position is that Krikorian acted as Miller's attorney-agent with respect to the PRA request and litigation. The District contends that because

5

Miller, Krikorian's principal, owned the cause of action and released that cause of action in her settlement with the District, Krikorian, as a mere agent, cannot maintain her PRA claims. The District is correct.

"Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. LAW INST. 2006). "The elements of common-law agency are present in the relationships between . . . client and lawyer." RESTATEMENT (THIRD) OF AGENCY § 1.01 note c. The burden of establishing the agency relationship rests on the party asserting its existence. Hewson Constr., Inc. v. Reintree Corp., 101 Wn.2d 819, 823, 685 P.2d 1062 (1984).

The evidence in the record incontrovertibly supports the District's position that Krikorian acted as Miller's agent with respect to the records requests. In federal district court motions, Krikorian repeatedly represented that Miller made the PRA requests: "Miller has been requesting documents reflecting the subject communications since January 2015"; "Miller submitted a second PRA request"; "Miller has been requesting documents reflecting the subject communications." A second federal court PRA motion referenced "Miller's request" and "Miller's PRA request".

These motions also alleged that it was Miller who was harmed by the wrongful withholding of records, and requested penalties on her behalf: "Miller should have been given access to an electronic folder containing the requested

6

emails." Alleging that the District wrongfully withheld records, "Miller respectfully requests an award of penalties against defendants in the amount of $27,200 - $100 per day for each of the 272 days [that] have lapsed since April 14."

Miller's PRA motions even requested an award of attorney fees. When arguing that "Miller is entitled to an award of attorneys' fees", the court was told that,

> [a]s a result of the District's conduct, Krikorian was forced to invest approximately 45 hours attempting to obtain the records and resolve this ongoing dispute. . . . Krikorian has made every imaginable attempt to find a solution to this dispute and has granted every requested courtesy. Yet, six months into this action, Miller is still without communications having to do with her child and the District's use of aversive interventions. As such, Miller respectfully requests that this Court grant an award of attorneys' fees in the amount of $30,875, pursuant to the declaration of Erica Krikorian.

The second PRA motion requests an award of even more attorney fees, explaining that,

> [a]t the time of the original motion, Miller had incurred $30,875 in attorneys' fees in connection with the dispute arising out of the Board Member emails. Since that time, another 75 hours of attorney time has been invested in the review of the subsequent productions, cataloging [the] nature and date of the content produced and in negotiations with opposing counsel for an informal resolution. As such, Miller respectively [sic] requests an award of $55,250 in attorneys' fees pursuant to paragraph 21 of the Declaration of Erica Krikorian.

This is all clear evidence that Krikorian was acting as Miller's agent with respect to the PRA claims.

Further, in negotiating the settlement between Miller and the District, Krikorian communicated with the District on Miller's behalf. Significantly, Miller

7

represented in her settlement agreement with the District that she was the sole owner of the PRA claim.

In support of her argument that she owns the PRA claim, Krikorian points only to the fact that she, herself, e-mailed the PRA requests to the District. This is not in dispute. Rather, it provides additional evidence that Krikorian sent the requests as an agent on behalf of a client. The first request states, "since we are in litigation, I am directing the request to you, as opposed to my client submitting the request directly to the district. However, if you prefer that she submit the request directly please let me know so she can proceed accordingly." And in the second records request, Krikorian discusses the federal court litigation at length, contextualizing her requests as being taken in furtherance of her client's goals in that lawsuit.

The records requests, federal court motions, and settlement agreement support that Krikorian was Miller's agent from the inception of the PRA request to its settlement. Krikorian acted "on the principal's behalf and subject to the principal's control." She submitted the request on behalf of Miller, filed motions to enforce the requests on behalf of Miller, and negotiated the resolution of the PRA claims on behalf of Miller. By releasing the PRA claim as its sole owner, Miller demonstrated that Krikorian, as agent, was subject to her control. Viewing the evidence in the light most favorable to Krikorian, there is no indication that she was anything other than Miller's agent with respect to the PRA requests and claims.

Miller released the PRA cause of action in the settlement agreement. An agent derives from her principal only such powers as the principal has. Schorman v. McIntyre, 92 Wash. 116, 119, 158 P. 993 (1916). Because Miller, as principal, extinguished the cause of action, Krikorian, as agent, cannot assert rights that Miller no longer possesses. Moreover, because Krikorian was Miller's agent, it is irrelevant that Krikorian was not a party to the settlement agreement.[3]

In further support of this outcome, our Rules of Professional Conduct (RPC) militate against the inference that an attorney-agent would find herself as anything other than the client's agent in the prosecution of such a cause of action. These rules provide, as follows:

> **CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES**
> **(a)** A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of an independent lawyer on the transaction; and
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

---

[3] Krikorian cites Ebling v. United States Dep't of Justice, 796 F. Supp. 2d 52 (D.D.C. 2011), for authority that Miller cannot waive Krikorian's right to a PRA cause of action. In that case, the court held that the requestor's nephew did not, in a plea agreement, waive the requestor's right to make a Freedom of Information Act (FOIA) (5 U.S.C.A. § 552) request. Ebling is not analogous because it relates to waiver of the right to make a records request, not the right to maintain a cause of action. Also, there was no indication in Ebling that the aunt and nephew had a recognized principal-agent relationship, such that the nephew could affect the rights of the aunt.

. . . .
> **(i)** A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
>> (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
>> (2) contract with a client for a reasonable contingent fee in a civil case.

RPC 1.8.

Krikorian asserts that she has an independent propriety interest in the PRA cause of action that Miller attested to be hers alone. If this were so, Krikorian would be afoul of RPC 1.8(a). During settlement negotiations, Krikorian's asserted interest in a PRA cause of action was directly adverse to her client's interest in settling the case. The record lacks evidence that Krikorian made the necessary disclosures to overcome this conflict of interest.

Moreover, if Krikorian had an interest in the PRA cause of action as a co-principal along with Miller, that would be in clear violation of RPC 1.8(i), because Krikorian's asserted interest does not involve acquiring a lien to secure a fee or contracting with a client for a reasonable contingency fee.

The parties refer us to three Washington cases that, while discussing similar issues as concerning standing, can easily be seen as consistent with the agency law framework that we utilize.[4] In <u>Germeau v. Mason County</u>, 166 Wn.

---

[4] Krikorian also cites a number of federal cases on standing to maintain a FOIA cause of action. These cases are inapposite. Not only do federal courts have a different test for standing, but FOIA bestows a cause of action only on the individual who personally signs and submits the request. <u>Hajro v. United States Citizenship & Immigration Servs.</u>, 811 F.3d 1086, 1105 (9th Cir. 2016). This approach was rejected in <u>Kleven</u> and <u>Cedar Grove</u>.

App. 789, 271 P.3d 932 (2012), a representative of a guild requested county public records. The representative later brought a PRA suit against the county. The county argued that the guild, not the representative, had standing to bring the PRA action. The court disagreed, reasoning that the representative had standing because he had a personal stake in receiving the requested information. Germeau, 166 Wn. App. at 804. Viewing this case through an agency framework, the representative requested public records as an agent of the guild. He then continued, as an agent, to prosecute the cause of action for a violation related to the request, with no indication either that he was acting outside the authority given to him by the guild or that he would have kept for himself any monetary recovery resulting from the action.

In Kleven v. City of Des Moines, 111 Wn. App. 284, 44 P.3d 887 (2002), an attorney submitted a public records request to the city without mentioning a client. The client later sued the city under the PRA. The city argued that the client lacked standing because the attorney communicated the request. However, because the attorney certified that he had made the request on behalf of the client, the court concluded that the client had a personal stake in the PRA claim and, thus, standing to bring suit. Kleven, 111 Wn. App. at 290-91. Similarly, in Cedar Grove Composting, Inc. v. City of Marysville, the undisclosed client of an attorney requester was found to have standing to maintain a later PRA cause of action arising from the request. 188 Wn. App. 695, 712-13, 354 P.3d 249 (2015).

These decisions are harmonious with today's decision. The attorney-agents in Kleven and Cedar Grove took their actions on behalf of properly undisclosed principals. Those principals owned the PRA cause of action and later prosecuted that cause of action. Because they owned the cause of action, the principals, of course, had standing to bring the action.[5]

Government agencies, forbidden to inquire into the purpose of a PRA request, cannot examine the nature of a requestor's interest as we have done here. But application of the law of agency should give governments reason for serenity. Governments, as the third party in the principal-agent relationship, may be assured that they are responding properly to a request by relying on principles of apparent authority.[6] A government can discharge its duties under the PRA by providing records to an agent acting with actual or apparent authority.

III

Krikorian requests an award of attorney fees pursuant to RCW 42.56.550(4), which mandates a fee award to any person denied the opportunity to inspect records under the PRA. As Krikorian has not established a PRA violation, she is not entitled to an award of fees.[7]

---

[5] A cause of action is a thing with value. It is owned and can be conveyed. In any particular case, a body of law will exist to assist in determining ownership, e.g., the laws of agency, personal property, corporations, partnerships, etc.

[6] "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03.

[7] No purpose would be served by our review of the trial court's determination not to rule on Krikorian's summary judgment motion. Krikorian's request that we do so is, therefore, denied.

The District requests an award of attorney fees, costs, and terms under RAP 18.9(a), claiming that Krikorian filed a frivolous appeal. "An appeal is frivolous if there are 'no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility' of success." West v. Thurston County, 169 Wn. App. 862, 868, 282 P.3d 1150 (2012) (internal quotation marks omitted) (quoting In re Recall Charges Against Feetham, 149 Wn.2d 860, 872, 72 P.3d 741 (2003)). Krikorian's appeal is not frivolous, as it presented an issue warranting a published opinion. We decline to award fees or terms to either party. The District may recover the costs otherwise available to parties who prevail in our court.

Affirmed.

WE CONCUR:

_____
Mann, A.C.J.