[Nos. 24059-5-I; 24060-9-I. Division One. December 10, 1990.]

JACK F. MCGOVERN, *Individually and as Executor,* ET AL, *Appellants,* v. TERRY R. SMITH, ET AL, *Respondents.*

*Lee McNair,* for appellants.

*Joseph D. Puckett,* pro se, and for respondents Smith.
*Karen L. Gibbon,* pro se.

BAKER, J.—This is a consolidated appeal involving claims that a $90,000 loan transaction violated the usury laws. The first claim is made by Jack McGovern, individually, whose action against Terry R. Smith was dismissed by summary judgment. McGovern alleges that remaining issues of material fact exist as to whether he had a business purpose in obtaining the loan.

The second claim is made by McGovern in his capacity as executor of the estate of Katherine D. Marino and by Glen H. Neuman, trustee of the Angie Marino trust (hereinafter the Marinos).[1] The Marinos' claim against Smith survived cross motions for summary judgment and went to trial. The Marinos allege that the trial court erred by denying them the usury penalty deductions set forth in RCW 19.52.030, and by concluding that they suffered no actual damages and therefore were not entitled to an award under the consumer protection act. The Marinos also contend that judicial foreclosure was required after the trial court issued an order temporarily restraining the nonjudicial foreclosure sale of their home, which was the security for this loan. They further contend that RCW 19.52.032 is unconstitutional because it violates the state constitution's privileges and immunities clause, as set forth in Const. art. 1, § 12.

Terry R. Smith cross–appeals, asserting that the trial court erred in determining that one borrower to a single loan transaction could have a business purpose, while other borrowers might not have such a purpose. He further asserts that the trial court erred by failing to set a bond

---

[1]The Marino sisters were McGovern's aunts. Both are now deceased.

under RCW 61.24.130 as a condition for enjoining the trustee's sale of the property securing the loan.

Both McGovern and the Marinos claim attorney fees from trial and on appeal. Smith claims he is entitled to fees on appeal.

I

FACTS

In the fall of 1983, Jack McGovern, whose adult career had been devoted to restaurant development and management, was suffering severe financial setbacks. His business establishment, McGovern's Music Hall, had closed in April of that year, and he had not been subsequently engaged in any business. He had gone through a financially difficult divorce and a bankruptcy proceeding in which his business debts were discharged.

In November 1983, McGovern negotiated a $68,500 loan from General Acceptance Corporation (GAC). It is disputed whether that loan was principally for business purposes. Nevertheless, McGovern signed an affidavit in connection with the loan stating that the loan transaction

is primarily for commercial, investment or business purposes and is not a consumer transaction. Consumer transaction is defined as transactions primarily for personal, family or household purposes.

The Marinos executed a note and deed of trust securing the loan. Only McGovern signed the loan agreement, and he was also a signatory to the deed of trust note. The closing statement shows no funds disbursed to the Marinos. The $40,364.94 balance was disbursed to McGovern at closing on December 5, 1983.

During the course of the spring and summer of 1984, McGovern met frequently with Terry Smith in an effort to collaborate on a restaurant venture. They considered the purchase of existing restaurants and searched for sites to build a new restaurant. Their intent was to acquire or open a restaurant which Smith would own and McGovern would manage. McGovern was also having similar discussions with

several other investors during this period, a fact of which Smith was aware.

In the course of these meetings, McGovern claims that he discussed with Smith his failed business enterprise, the bankruptcy, and his financially disastrous divorce. He declares that he told Smith he was destitute and had no money to cover his living expenses, and no source of income. He also told Smith that he had a very burdensome loan with high interest rates from GAC. The two agreed that Smith would refinance the GAC loan in an arrangement that would relieve McGovern from making payments for 1 year.

McGovern claims that Smith knew his business debts relating to the Music Hall had been discharged in the bankruptcy. He "really believe[s]" he told Smith that the money was going to be used for his personal and living expenses, and thinks he "might have" also told Smith that the GAC loan had a similar purpose.

Smith testifies that McGovern told him the GAC loan "was a result of his losses in the Music Hall", and that he believed McGovern had used the GAC loan proceeds to pay Music Hall debts. Smith acknowledges that he knew in the summer of 1984 that McGovern had gone bankrupt, had financial burdens, and had suffered severe losses from the operation of the Music Hall and from his divorce. He also knew that McGovern was not involved in any business during this period. He further admits that McGovern told him he could not concentrate on any new restaurant project due to the pressure of the GAC obligation and due to his concern that GAC might call the note if he missed a payment. McGovern may have said he was also concerned about protecting his aunts' home. However, Smith assumed McGovern was not in financial straits because he presumed the Marinos gave him some money for the care he provided for them, and that his girl friend could loan him some money.

Both Smith and McGovern agree that the primary purpose of the $90,000 loan by Smith was to allow McGovern to obtain relief from the GAC loan obligation.

The day before the loan was finalized, Smith's attorney went with McGovern to the Marinos' home, where the Marinos signed the deeds of trust. No discussion took place during that meeting regarding the purpose of the Smith loan.

On September 13, 1984, McGovern executed the loan agreement and a business purpose affidavit. The loan agreement provided that McGovern would execute the affidavit indicating that the funds were to be used "solely" for business and commercial purposes. The affidavit stated that the purposes of the loan were to pay off the GAC loan and that the balance of the proceeds would be used by McGovern

> for expenses related to the promotion of a restaurant in which I will be associated with Terry R. Smith, or primarily for other commercial, investment or business purposes of the undersigned.

McGovern further affirmed that the GAC loan

> was a transaction primarily for commercial, investment or business purposes and the proceeds were not used for personal, family or household purposes.
>
> The undersigned further acknowledges that no portion of the loan proceeds to be received from Terry R. Smith will be used for personal, family or household purposes.

McGovern claims that it was made clear to him that if he did not sign the business purpose affidavit he would not get the loan. He claims he signed it, knowing it was untrue, because of his desperate financial straits. He did not explicitly tell Smith or his attorney that the statements in the business purpose affidavit were inaccurate, since he believed Smith knew why he needed the money.

The loan agreement provided for an annual interest rate of 7 percent over prime, but in no event less than 17 percent, and a default rate of 36 percent. It included a clause which provided that if the proposed restaurant were built and if McGovern were employed by Smith, the principal

amount of the loan would be reduced by the sum of one-half of the prepayment penalty McGovern would incur by prepaying the GAC loan. The legal description of the site on which the proposed restaurant was to be built was attached as an exhibit to the agreement.

The loan amount of $90,000 was evidenced by two deed of trust notes in the amounts of $68,500 and $21,500. As with the GAC loan, the Marinos alone signed the deeds of trust, while both the Marinos and McGovern signed the deed of trust notes. Only McGovern signed the loan agreement and only McGovern received the loan proceeds. After the GAC loan and miscellaneous costs were paid, the remainder was applied to a $1,800 loan fee payable to Smith, a $1,000 payment of attorney fees to Smith's attorney, and a $1,500 payment to Smith for a recent prior loan he had made to McGovern.[2] McGovern received proceeds of $6,693.39.

As to the remaining $6,693.39 in loan proceeds, McGovern claims he told Smith that the proceeds would be used by him for his daily living expenses while he was waiting to see if any restaurant deal would be finalized. He claims Smith described the proceeds as "walking around money" for McGovern's use. Smith testifies, on the other hand, that McGovern never revealed his intended use for the funds. Smith asserts he believed McGovern needed that money for some purpose in connection with the other investors with whom he was working, though he admits that he was never advised of any specific business that McGovern and the investors were going to develop.

After the loan was made, efforts by Smith and McGovern to obtain a restaurant continued for a period, to no avail. During September and November of 1985, McGovern paid a total of $4,638 on the loans. No further payments were made. McGovern produced account records which he

---

[2] A few weeks prior to the closing date, Smith had loaned McGovern $1,500 when McGovern was unable to come up with the cash to make a payment to GAC.

claimed demonstrated that all the net proceeds of the Smith loan were used for his personal living expenses.

The notes were payable on December 2, 1986. Smith and McGovern had several discussions concerning the lack of payment, but Smith forbore in view of their friendship. In March of 1987, he told McGovern that he could not wait much longer before commencing foreclosure proceedings, because he believed that the amount due was approaching the value of the security. The Marino home had been appraised at $250,000.

Smith's first formal demand for payment was the issuance of notices of foreclosure and trustee's sale in mid–August of 1987, which commenced a nonjudicial foreclosure of the deeds of trust. At that time, $183,979.71 was claimed due to reinstate the deeds of trust.

McGovern and the Marinos responded 3 months later by filing a suit for injunctive relief from the deed of trust sale, alleging usury, consumer protection act violations, breach of contract, and defects in the notice of foreclosure. These defects included an allegation that Smith's attorney in the litigation had a conflict of interest, since he was both representing Smith in an adversarial role and acting as trustee in the sale. A number of procedural defects were also alleged, including an improper Saturday sale date.

Smith's attorney subsequently resigned as trustee and discontinued the sale. A successor trustee recommenced the foreclosure proceedings. The amount alleged due to reinstate as of the date of the second notice of foreclosure, December 17, 1987, was $205,842.18.

McGovern and the Marinos again moved to enjoin the sale. Smith moved for summary judgment. The motions were heard together. After the court's oral ruling but before it entered a written order, the Marinos moved for summary judgment against Smith.

The court granted Smith's motion for summary judgment against McGovern, holding that business was the primary

purpose of the Smith loan as far as McGovern was concerned. Smith was awarded attorney fees for defending against McGovern's claims.

The court denied Smith's motion for summary judgment against the Marinos and the Marinos' motion for summary judgment against Smith. The court ruled that Smith had not met his burden of proof that the loan fell within the business purpose exemption of RCW 19.52.080 as to the Marinos, so that issue proceeded to a bench trial.

The court enjoined the trustee's sale, and held that no bond was required, reasoning that since the Marinos were not required to make any payments on the notes, the property itself could serve as security for the enjoining of the sale.

Following the trial, the court held that the notes were usurious as to the Marinos. However, the court held that the Marinos had failed to commence their action within 6 months of the December 2, 1986, due date and therefore the penalty remedies provided in RCW 19.52.030 were unavailable to them. It reformed the notes to provide for the maximum legal interest rate allowable on a consumer transaction in September of 1984, which was 15.45 percent.

The court declined to characterize the $1,800 loan fee and the $1,000 lender's attorney fees as interest since they served to reimburse Smith partially for services that were actually provided. The court held that the Marinos had not proved any actual damages, so they were not entitled to an award under the consumer protection act. Finally, the court held that the Marinos and Smith should each bear their own costs and attorney fees. The injunction on the trustee's sale was lifted.

## II
### ANALYSIS
#### A. McGovern Appeal

McGovern contends that issues of fact remain as to whether he had a business purpose in entering into the loan. He asks this court to rule that before lenders may

claim the business purpose exemption for an otherwise usurious loan, they must first identify a specific business enterprise and obtain information regarding the intended source of repayment at the time of entering into the loan contract. Smith replies that it is undisputed that the primary purpose of the loan was to pay off the GAC loan. Thus, he claims, this court must look to the purpose of entering into the GAC loan as the controlling factor. Smith argues that it is sufficient that McGovern signed a business purpose affidavit in connection with the GAC loan and reaffirmed it at the time of entering into the Smith loan. As to the $6,693.39 in remaining loan proceeds after the GAC loan was paid off, Smith argues that McGovern was working with Smith and other investors on restaurant acquisition plans, and it was reasonable to assume that these funds would be used to assist him in that purpose.

██ ██ When reviewing a summary judgment, this court engages in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All evidence and the inferences therefrom are to be construed in favor of the nonmoving party. The motion should be granted only if reasonable persons could reach but one conclusion from all the evidence. *Chelan Cy. Deputy Sheriffs' Ass'n v. County of Chelan,* 109 Wn.2d 282, 294–95, 745 P.2d 1 (1987). Even where evidentiary facts are undisputed, summary judgment will not be proper where reasonable minds could draw different conclusions from those facts. *Chelan Cy.,* 109 Wn.2d at 295.

██ Smith does not contest that this loan was usurious on its face. Therefore, it is Smith's burden to prove that the loan is exempt from the otherwise applicable usury law. *See Stevens v. Security Pac. Mortgage Corp.,* 53 Wn. App. 507, 514, 768 P.2d 1007, *review denied,* 112 Wn.2d 1023 (1989). Specifically, Smith must show that McGovern is not entitled to maintain an action based on usury due to the business purpose exemption stated in RCW 19.52.080, which provides in relevant part:

[P]ersons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount.

Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

■ ■ A loan's purpose in the context of RCW 19.52.080 is "principally established by the representations the borrower makes to the lender at the time the loan is procured." *Brown v. Giger,* 111 Wn.2d 76, 82, 757 P.2d 523 (1988). The business or personal nature of the loan is a factual question to be answered after evaluating the circumstances surrounding the transaction. *Conrad v. Smith,* 42 Wn. App. 559, 563, 712 P.2d 866, *review denied,* 105 Wn.2d 1017 (1986).

Where a borrower's representations are inconclusive, written statements in the loan documents may be dispositive. *Marashi v. Lannen,* 55 Wn. App. 820, 824, 780 P.2d 1341 (1989) (summarizing holdings of *Brown v. Giger, supra, Pacesetter Real Estate, Inc. v. Fasules,* 53 Wn. App. 463, 767 P.2d 961 (1989), and *Conrad v. Smith, supra*). A direct conflict in the evidence on the material issue of the loan's purpose, however, will normally create an issue for the jury. *Marashi.* Thus, where a written certificate of purpose is in conflict with oral disclosures, the court cannot conclude as a matter of law that the lender was unaware of the true purpose of the loan and was entitled to rely on the statements contained in the borrower's written certificate. *See Marashi,* 55 Wn. App. at 825; *see also Brown v. Giger,* 111 Wn.2d at 83 (objective manifestations of purpose are not always determinative of applicability of business purpose exemption, since courts will not deny a borrower's protections against usury when a lender manipulates a loan's structure so as to evade usury restrictions).

We must first determine whether the analysis is to be made of the circumstances of the Smith loan or of the underlying GAC loan. This question was addressed in

*Conrad v. Smith, supra,* a case brought under both the state usury laws and under the federal Truth in Lending Act. There, the borrower received a loan to refinance a defaulted loan. It was undisputed that the first loan had a business purpose. *Conrad,* 42 Wn. App. at 561. When the borrower defaulted on the second loan and the lender initiated foreclosure proceedings, the borrower commenced an action alleging usury and violation of the Truth in Lending Act. *Conrad,* 42 Wn. App. at 561–62. In reviewing a dismissal of the borrower's claim by summary judgment, this court found that he had made numerous representations during the loan process "with the apparent intention of obfuscating matters", *Conrad,* 42 Wn. App. at 566, and that the lenders were unaware that the loan had any purpose other than business. Under such circumstances, the court held that the loan's original characterization would control throughout the life of the loan. However, the court stated that such a result would not necessarily obtain under different facts. *Conrad,* 42 Wn. App. at 566.

We find the facts of this case distinguishable from those in *Conrad.* There is no evidence, for example, that McGovern attempted obfuscation in his representations to Smith. Furthermore, McGovern's statements to Smith regarding his financial circumstances and that the proceeds of the loan would be used for daily living expenses could support a finding that Smith was aware of a nonbusiness purpose.

Moreover, we do not accept the proposition that a business purpose certificate signed in connection with one loan will control the nature of subsequent loans used to refinance or repay the prior loan. For example, if a borrower borrows for a legitimate business purpose of providing inventory for a sole proprietorship, and that business later fails, the borrower may be left with a *personal* obligation. A loan made to repay that obligation is not for a business purpose.

The facts herein are similar to this example. Thus, we hold that the purpose of the GAC loan does not necessarily control the trier of fact's determination as to the purpose of the Smith loan. Even assuming a valid primary business purpose for the original GAC loan, if McGovern was left with a solely personal obligation as a result of that loan, a loan made to refinance that obligation would not be for a business purpose.

Construing the facts most favorable to McGovern, he informed Smith that he had suffered a failed business enterprise, had gone through bankruptcy as a result, and had gone through a divorce which resulted in severe financial difficulties for him. McGovern had complained to Smith that he was worried he could not maintain his current obligation on the onerous GAC loan. Further, McGovern represented to Smith that the money was going to be used at least in part for personal purposes, and Smith acknowledged his awareness of this in referring to the roughly $6,000 in loan proceeds as McGovern's "walking around" money. Finally, Smith knew that McGovern was not involved in any continuing business enterprise. These facts, and the reasonable inferences to be drawn from them, conflict with McGovern's written business purpose certificate. Thus, we find that a question of fact is raised as to whether Smith reasonably relied upon McGovern's business purpose certificate.

Moreover, though Smith may have assumed that McGovern had vague business prospects resulting from his discussions with other investors, he admits that he was unaware of any specific business venture to which McGovern intended to apply the loan proceeds. Such speculation by a lender, even when combined with a business purpose certificate signed by the borrower, is not enough to establish the business purpose exemption of RCW 19.52-.080 as a matter of law in the face of the circumstances discussed above.

Therefore, we reverse the summary judgment dismissing McGovern's action against Smith, and remand the matter for trial to determine the true purpose of the loan.

## B. Smith Cross Appeal

Smith contends that the trial court erred in determining that the Marinos could have a different purpose for the loan than McGovern. He assigns error in this regard to the trial court's denial of his motion for summary judgment. He asserts that his burden should have been merely to characterize the loan transaction, which can have only one primary purpose.

The Marinos first reply that Smith's assignment of error to the denial of his motion for summary judgment is improper. If this court considers the error, they argue further that it is acceptable to treat multiple borrowers to a single transaction differently, and that the Marinos were borrowers because they signed the notes. The Marinos contend that since the trial court's findings support the conclusion that they knew nothing regarding any alleged business purpose for the loan, the exemption does not apply to them.

The Marinos are correct that Smith has technically failed to make a proper assignment of error. His correct procedural route would have been to assign error to that portion of the trial court's final judgment in which it declined to modify the prior denial of Smith's motion for summary judgment. That would have permitted this court to review not only the final judgment but also the prior summary judgment motion denial, since under RAP 2.4(a) and (b), the scope of appellate review includes "the decision or parts of the decision designated in the notice of appeal" and any earlier ruling if it "prejudicially affects the decision designated in the notice". *See Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 505, 798 P.2d 808 (1990). *Fox* is consistent with earlier decisions of this court holding that denial of a summary judgment motion may be reviewed after entry of

final judgment. *See, e.g., Bullo v. Fife,* 50 Wn. App. 602, 603 n.1, 749 P.2d 749 (1988).[3]

■ However, Smith's failure to assign error to the final judgment will not deprive this court of its prerogative to review the cross appeal on its merits. Our rules of appellate procedure "will be liberally interpreted to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a). Where the nature of the challenge is perfectly clear, we will consider the merits of the challenge. *See Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 431, 730 P.2d 653 (1986). We therefore will consider the legal issue of whether separate borrowers to a single loan transaction could have different purposes in the context of RCW 19.52.080.

■ The cases cited above dealing with the determination of business purpose typically discuss the question in terms of the purpose of the *transaction,* rather than the purpose of a borrower. *See, e.g., Giger,* 111 Wn.2d at 82; *Pacesetter,* 53 Wn. App. at 471; *Marashi,* 55 Wn. App. at 825. Similarly, the language of the exemption itself speaks in terms of the purposes of the transaction. We conclude that different parties to a loan transaction cannot have separate and conflicting purposes within the context of the business purpose exemption of RCW 19.52.080.

■ Moreover, the Marinos signed the promissory notes, but received no disbursements from the loan. They were not liable for any cash payments, and Smith's sole recourse against the Marinos was to foreclose upon the real estate. For these reasons, the Marinos should not be regarded as borrowers, but merely as sureties to the extent of the value of the pledged real property. It is the purpose of the principal only that controls the purpose of the transaction for

---

[3]We distinguish in this regard *Johnson v. Rothstein,* 52 Wn. App. 303, 759 P.2d 471 (1988), which held that denial of a summary judgment was not reviewable following trial if the denial was based on a determination that there were disputed issues of material fact. *Johnson* specifically reserved the issue of whether denial of summary judgment on a substantive legal issue, which this case presents, is also not reviewable. *See Johnson,* 52 Wn. App. at 305 n.4.

determining whether the business exemption statute applies.

Unless they have suretyship defenses to liability on the promissory notes, the Marinos' liability is coextensive with McGovern's, to the extent of the value of their pledged real property. We therefore reverse the judgment in the Marino–Smith trial.[4] The liability of the Marinos will rest upon the ultimate determination of the liability of McGovern and resolution of any potential suretyship issues.[5]

## C. Attorney Fees

McGovern and the Marinos have sought recovery of certain attorney fees from trial and on appeal.

McGovern claims fees from the time suit was commenced up to the point the successor trustee was appointed. We decline to address the issue of attorney fees in a piecemeal manner. If McGovern succeeds at trial on remand, a fee award covering the period from the time the suit was commenced may be appropriate.

Since we have reversed the judgment of the trial court pertaining to the Marinos, no fees are due them from trial or on appeal. Fees incurred after remand should abide the result below.

Because McGovern has prevailed in this appeal on the major substantive issue concerning the applicability of the business purpose exemption, we grant his request for attorney fees as the prevailing party on appeal, pursuant to RCW 4.84.330. We refer the matter to the commissioner of this court pursuant to RAP 18.1(f). We note, however, that

---

[4] In view of our determination, it is not necessary for us to address the issues raised by the Marinos.

[5] Smith raises an additional issue in his cross appeal. He argues the trial court should have required a monthly payment into the registry of the court in the amount of the accruing interest at the nondefault rate, as a condition to the order restraining the trustee's sale. This issue was not adequately briefed on appeal, so we decline to decide it on the merits. *See State v. Kelley*, 52 Wn. App. 581, 587, 762 P.2d 20 (1988).

the affidavit submitted does not segregate the appellate fees requested between McGovern and the Marinos.

### D. Conclusion

We reverse and remand the McGovern claim for trial. The judgment of the Marino–Smith trial is vacated.

SCHOLFIELD and PEKELIS, JJ., concur.

After modification, further reconsideration denied February 6, 1991.