# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PENNY ARNESON f/k/a PENNY ARNESON SWEET, on behalf of herself personally, | DIVISION ONE |
| Plaintiff, | No. 83234-4-I |
| PENNY ARNESON f/k/a PENNY ARNESON SWEET, on behalf of the 6708 Tolt Highlands Personal Residence Trust, | UNPUBLISHED OPINION |
| Appellant, | |
| v. | |
| GARY NORDLUND, | |
| Respondent, | |
| MFE, LLC; COLUMBIA NORTH WEST MORTGAGE; MARK D. FLYNN; L80 COLLECTIONS, LLC; ALDENTE, LLC, ROGER MAY and "JANE DOE" MAY; McGAVICK GRAVES, P.S., and DOE DEFENDANTS 1 through 20, inclusive, | |
| Defendants. | |

DWYER, J. — This is the third appeal in a lawsuit involving a loan that Gary Nordlund extended to the 6708 Tolt Highlands Personal Residence Trust (Trust). The Trust challenges the trial court's determination, following a bench trial, that the Trust failed to prove that certain loan disbursements constituted usurious interest. The Trust also seeks reversal of certain pretrial rulings. Because the Trust does not establish an entitlement to relief, we affirm.

I

The underlying facts are set forth in further detail in our opinions in Arneson v. Nordlund (Arneson I), No. 71148-2-I (Wash. Ct. App. March 30, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/711482.pdf, and Arneson v. Nordlund (Arneson II), No. 78053-1-I (Wash. Ct. App. Sept. 3, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/780531.pdf. We summarize them here.

The Trust was established in 2006, with Penny Arneson and her then-husband, Kenneth Sweet, as co-trustees. The Trust held title to Arneson and Sweet's family home, located at 6708 Tolt Highlands Road NE in Carnation, Washington (the Property).

In 2009, Arneson and Sweet were in the process of dissolving their marriage, and the family court authorized Sweet to borrow against the equity in the Property to satisfy an existing Trust debt and to pay certain of Sweet's expenses. Sweet, as a co-trustee of the Trust, arranged for a $375,000 loan from Nordlund. The loan was brokered by an individual named Mark Flynn. Although the record does not reflect how Sweet and Flynn initially came into contact, it does establish that Nordlund was acquainted with Flynn because their children attended the same school. Flynn approached Nordlund, who had not had contact with Sweet or Arneson before, about making the loan.

The loan closed on January 15, 2010, and was evidenced by a promissory note (Note). The Trust's obligations under the Note were secured by a deed of trust encumbering the Property. The Note became due and payable on January

15, 2011.  After the Trust failed to timely pay the balance on the Note, Nordlund initiated a nonjudicial foreclosure under the deed of trust.  Arneson, both individually and on behalf of the Trust, filed this lawsuit against Nordlund,[1] alleging breach of the deed of trust act,[2] intentional and negligent misrepresentation, and violation of the Consumer Protection Act (CPA),[3] premised on violations of the Consumer Loan Act,[4] and the usury act.[5]

In January 2012, the trial court granted the Trust's request to enjoin the foreclosure of the Property but ordered the Trust to sell the Property and deposit the proceeds in the court registry, which the Trust did.

In November 2013, the trial court dismissed all of Arneson's and the Trust's claims against Nordlund on summary judgment.  The Trust appealed and, in Arneson I, we affirmed dismissal of Arneson's individual claims against Nordlund because Arneson lacked standing to sue Nordlund in her individual capacity.  Arneson I, slip op. at 20.  However, we reversed the dismissal of the Trust's CPA claim, holding that genuine issues of material fact remained as to the underlying Consumer Loan Act and statutory usury claims.  Arneson I, slip op. at 14, 17-18.

On remand, Nordlund asserted a counterclaim against the Trust for breach of its obligations under the Note.  Nordlund also moved for summary judgment on the Trust's statutory usury claim.  The trial court granted the motion

---

[1] Arneson and the Trust named other defendants in their lawsuit, but their claims against the other defendants are not at issue in this appeal.
[2] Chapter 61.24 RCW.
[3] Chapter 19.86 RCW.
[4] Chapter 31.04 RCW.
[5] Chapter 19.52 RCW.

on the basis that "[t]he Trust, as the debtor who is not a natural person, does not have standing to pursue a [statutory usury] claim."

In November 2016, the Trust filed its operative, second amended complaint herein and added a common law action in assumpsit for recovery of allegedly usurious interest paid under the loan.

In September 2017, Nordlund filed a motion for summary judgment on the Trust's remaining claims against him and on the Trust's liability under the Note. The trial court initially denied Nordlund's motion, indicating that genuine issues of material fact remained as to whether Nordlund "was in the business of making loans" such that the Consumer Loan Act applied. However, the trial court's order did not address Nordlund's motion for summary judgment as to the Trust's assumpsit claim or as to the Trust's liability under the Note. Accordingly, Nordlund moved for clarification.

In response, the Trust argued that it owed Nordlund "nothing" because Arneson had rescinded the Note in compliance with the federal Truth In Lending Act (TILA)[6] and its implementing regulations by delivering a rescission notice to Barbara Koval, the escrow agent who closed the loan on January 20, 2010. In a subsequent order, the trial court granted Nordlund's motion for clarification and determined "that the Trust is liable to Mr. Nordlund on [the Note] as a matter of law." The trial court also dismissed the Trust's assumpsit claim.

In November 2017, a jury trial was held on the Trust's Consumer Loan Act claim. See Arneson II, slip op. at 5. The jury found by special verdict that

---

[6] 15 U.S.C. § 1601 et seq.

4

Nordlund was not "engaged in the business of making qualified secured or unsecured loans of money in January 2010," thus vitiating the Trust's Consumer Loan Act claim and, consequently, its CPA claim. Arneson II, slip op. at 6. The trial court entered judgment on the verdict and dismissed the Trust's claims against Nordlund with prejudice.

The Trust again appealed. It assigned error to (1) the trial court's dismissal of the Trust's statutory usury claim, (2) the trial court's dismissal of the Trust's assumpsit claim, and (3) a jury instruction related to the Trust's Consumer Loan Act claim. The Trust did not, however, assign error to the trial court's determination that the Trust was liable on the Note as a matter of law. Additionally, the Trust asserted that it "never disputed the existence of a debt" and, in response to apparent confusion on Nordlund's part as to the Trust's position with regard to the existence of a debt, the Trust represented that, although it had relied below on federal law to argue that the Note had been rescinded, "the issue was not plead[ed]."

In Arneson II, we held that the trial court did not err in instructing the jury and thus affirmed the dismissal of the Trust's Consumer Loan Act and CPA claims. Slip op. at 17-18. However, we reversed the trial court's dismissal of the Trust's assumpsit and statutory usury claims. Arneson II, slip op. at 11-13.

On remand from Arneson II, the Trust moved for summary judgment on its assumpsit claim, arguing that it had established each element of assumpsit as a matter of law. The Trust argued, with regard to the first element, i.e., the

5

existence of a loan or forbearance,[7] that "there is no credible evidence adduced to date – either through discovery or trial – to dispute the existence of a 'loan or forbearance.'" Nordlund, for his part, moved for summary judgment dismissal of the Trust's statutory usury claim, renewing an earlier argument—which the trial court did not reach in initially dismissing this claim—that the claim was time barred.

In response to Nordlund's motion, the Trust filed a "Motion for Summary Judgment (Rescission) and Memorandum in Opposition to Gary Nordlund's Motion for Partial Summary Judgment (Statute of Limitations)"[8] (Rescission Motion), arguing that it had no liability whatsoever under the Note because it had rescinded the loan pursuant to TILA. Nordlund moved to strike the Rescission Motion and for CR 11 sanctions, arguing that the "the Trust has already been found liable under the . . . Note as a matter of law," and "[t]he opportunity to claim that the Trust is not liable under the loan passed when the Trust failed to appeal this legal determination." Nordlund also argued that the Trust was judicially estopped from raising a rescission claim given its earlier representations that it never disputed the existence of a debt, that it did not plead rescission, and that no credible evidence had been adduced to dispute the existence of a loan.

The trial court declined to strike the Rescission Motion but, relying on judicial estoppel, declined to reach the merits of the Trust's rescission claim. The trial court also granted Nordlund's motion for sanctions and ordered the Trust

---

[7] See Flannery v. Bishop, 81 Wn.2d 696, 698, 504 P.2d 778 (1972) (setting forth the elements of an assumpsit claim).

[8] Some capitalization omitted.

and its counsel, jointly and severally, to pay Nordlund's reasonable attorney fees and costs incurred in responding to the Rescission Motion.[9] Meanwhile, the trial court granted Nordlund's motion for summary judgment on the Trust's statutory usury claim. The trial court also partially granted the Trust's motion for summary judgment as to its assumpsit claim. As a result of these orders, the only issues left for trial were whether Nordlund exacted more under the loan than was allowed by law, and if so, the amount due to the Trust in assumpsit.

Before trial, Nordlund moved in limine to exclude any evidence of consequential damages allegedly resulting from the court-ordered sale of the Property. Nordlund pointed out that, in its trial brief, the Trust asserted it was entitled to all damages proximately resulting from "Nordlund's unlawful lending behavior," including damages that the Trust allegedly incurred by selling the Property at a substantial loss. The trial court granted Nordlund's motion and a bench trial was held in June 2021. The only witnesses were Nordlund, Arneson, Koval, and Arneson's current husband.

The trial court entered detailed findings of fact and conclusions of law in August 2021. As is relevant to this appeal, the trial court determined that the Trust failed to establish all elements of its assumpsit claim with regard to the following four loan disbursements, which the Trust had alleged constituted usurious interest: (1) a $3,452.06 disbursement to Nordlund, (2) a $7,995 "Processing Fee" disbursed to an entity called "Columbia Northwest Mortgage"

---

[9] The trial court also ordered the Trust's counsel, individually, to pay $10,000 to the King County Bar Foundation. The Trust's counsel did not appeal and therefore only the sanctions payable jointly and severally by the Trust are before us.

(Columbia), (3) a $45,000 "Mortgage Broker Fee" disbursed to an entity called "MFE LLC" (MFE), and (4) an $8,742.83 disbursement to an entity called "L80 Collections." The trial court subsequently entered judgment in Nordlund's favor. The Trust appeals.

II

The Trust argues that the trial court erred when it excluded evidence of consequential damages related to the Trust's sale of the Property. This is so, the Trust asserts, because according to the Trust, our Supreme Court in Lee v. Hillman, 74 Wash. 408, 133 P. 583 (1913), "acknowledged the existence and availability of consequential damages as a remedy under the doctrine of assumpsit if the same is directly and proximately related to the exaction of [usurious] interest." Br. of Appellant at 46. The Trust is mistaken.

"The right to recover usury paid is a common-law right; the remedy is in assumpsit *for money had and received*." Edwards v. Surety Fin. Co. of Seattle, 176 Wash. 534, 536, 30 P.2d 225 (1934) (emphasis added). In Lee, our Supreme Court merely held that this common law remedy was not supplanted by a *statutory* cause of action for usury, which allowed recovery of treble damages but was subject to a one-year limitations period. 74 Wash. at 415. Lee did not hold that a plaintiff alleging a common law action for assumpsit could recover anything more than "the excess actually paid" in usurious interest, whether that excess was paid in money or other property. 74 Wash. at 415-16. To the contrary, the court expressly declined to consider that question. See Lee, 74 Wash. at 417 ("The question of appellant's right to recover in this action more

8

than the excess so paid by him above the highest rate allowed by our usury statute is not presented in the briefs of counsel, so we leave that question for future examination."). Neither Lee nor the other two cases the Trust cites support the Trust's assertion that consequential damages are available in a common law action in assumpsit for recovery of usurious interest payments. See Hopgood v. Miller, 107 Wash. 449, 452, 181 P. 919 (1919) (holding that, by deeding a mortgaged property to the lender in satisfaction of the debt, borrower did not waive his right "to recover back *the usurious interest or payments exacted from him*" (emphasis added)); Flannery v. Bishop, 81 Wn.2d 696, 700, 504 P.2d 778 (1972) (acknowledging the existence of a common law action "'to recover the money or property unlawfully taken . . . *in payment of* usurious interest'" (emphasis added) (quoting Lee, 74 Wash. at 416)). Accordingly, the Trust does not establish that the trial court erred in excluding evidence of consequential damages associated with the sale of the Property.

III

The Trust next argues that the trial court erred in failing to characterize the challenged loan disbursements as usurious interest.[10] We disagree.

---

[10] In addition to challenging the trial court's characterization of certain loan disbursements, the Trust also assigns error to a number of the trial court's specific findings of fact and conclusions of law. But instead of supporting these assignments of error with argument and authority as required by RAP 10.3(a)(6), the Trust attempts to incorporate the arguments from a motion for reconsideration filed in the trial court. We do not consider these arguments. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("[T]rial court briefs cannot be incorporated into appellate briefs by reference."). Nor do we consider the Trust's belated attempt to argue its assignments of error in its reply. See Neighbors of Black Nugget Rd. v. King County, 88 Wn. App. 773, 780, 946 P.2d 1188 (1997) (declining to consider argument raised for the first time in a reply brief). The Trust's specific assignments of error are waived. See Puget Sound Bank v. Richardson, 54 Wn. App. 295, 298, 773 P.2d 429 (1989) ("Assignments of error unsupported by argument or authority are deemed waived.").

"In a bench trial where the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the trial court's findings of fact and whether those findings support the court's conclusions of law." Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 63, 277 P.3d 18 (2012). "Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." Newport Yacht Basin Ass'n, 168 Wn. App. at 63-64. In conducting our review, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the party that prevailed below—here, Nordlund. Scott's Excavating Vancouver, LLC v. Winlock Props., LLC, 176 Wn. App. 335, 342, 308 P.3d 791 (2013). We review the trial court's conclusions of law de novo. Scott's Excavating, 176 Wn. App. at 342.

To prevail on its claim for assumpsit, the Trust had to prove: (1) the existence of a loan "of money, or of something circulating as such," (2) "an understanding between the parties that the principal shall be repayable absolutely," (3) "the exaction of a greater profit than is allowed by law," and (4) "an intention to violate the law." Flannery, 81 Wn.2d at 698.

Here, the latter two elements were the only elements disputed at trial. The trial court found, with regard to the $3,452.06 disbursed to Nordlund, that this disbursement constituted interest in an amount greater than that allowed by law. However, the trial court also found that Nordlund "did not intentionally violate the law" by receiving the disbursement. The Trust does not address this latter finding in its opening brief, much less show that it was not supported by

10

substantial evidence. Instead, the Trust asserts, incorrectly, that the trial court found that the disbursement to Nordlund "should not be characterized as 'interest.'" Br. of Appellant at 49. Accordingly, the Trust does not establish an entitlement to appellate relief as to the trial court's determination that the Trust was not entitled to recovery in assumpsit for the disbursement to Nordlund.

Furthermore, the trial court's determination was supported by substantial evidence. Nordlund testified that his intent with regard to the loan was to charge 12 percent interest. Consistent with this intent, Nordlund testified that he signed a term sheet that Flynn had prepared indicating that the loan would bear interest at 12 percent. Nordlund testified that he at no point provided Flynn with any additional instructions with regard to the loan. Nordlund testified that at some point after the loan closed, he received a check in the amount of $3,452.06. He also testified that he was surprised to receive the check because he was not expecting it, so he called Flynn, who explained that the check was for interest from the time Nordlund deposited the funds into escrow until closing. Nordlund testified that prior to receiving the check, it had not occurred to him that he would be entitled to preclosing interest. A reasonable inference from Nordlund's testimony is that in depositing the unexpected check, Nordlund collected additional interest mistakenly and did not intentionally violate the law by doing so. See Metro Hauling, Inc. v. Daffern, 44 Wn. App. 719, 721, 723 P.2d 32 (1986) (although plaintiff alleging usury need not establish "intent of a culpable nature," plaintiff still must "prove that [the defendant] intentionally, rather than mistakenly or inadvertently, extracted the excessive interest").

11

With regard to the processing fee and mortgage broker's fee disbursed to Columbia and MFE, respectively, the trial court determined that the Trust failed to sustain its burden to show that either of these fees "represented additional interest or was not a reasonable fee for services rendered." This determination is also supported by substantial evidence. Both Arneson and Sweet, as the borrower's co-trustees, signed a settlement statement confirming that each had "carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts an[d] disbursements made on my account or by me in this transaction." The disbursements listed in the settlement statement included the disbursements to Columbia and MFE, which Nordlund testified he himself did not receive.

Additionally, Koval, the escrow officer, testified that she had worked in the escrow business for 42 years, had owned her escrow company for 25 years, and had customarily worked with borrowers and mortgage brokers. Koval testified that it was customary to make disbursements for both a broker fee and for a processing fee. Koval testified that the services mortgage brokers typically provide consist of "[f]inding a loan for a borrower that fit[s] their needs," and that the borrower typically pays for the mortgage broker's services. Koval also testified that although the broker's fee in a conventional loan was typically only one to two percent of the loan, she had not worked on very many "hard-money" loans like the subject loan. But she testified that she had a sense the broker's fee for such a loan would be higher because the borrower "can't get a conventional loan maybe, and so there's a lot more work on finding a lender."

Meanwhile, Arneson testified that she did not know what services MFE and Columbia provided. But she also testified that she had not had any direct contact with Sweet since February 2009, she did not communicate with him about who he was working with on the loan, she did not know whether Sweet reached out to Flynn or how they came into contact, and she did not have any direct contact with Flynn about the loan. And although it is undisputed that Columbia and MFE were both Flynn's companies, Arneson did not present any testimony from Flynn to show that these companies did not provide services related to the loan or any evidence that their fees were unreasonable.

Given the evidence that the Trust expressly approved the settlement statement showing the disbursements to Columbia and MFE, the evidence that Nordlund was not the recipient of those disbursements, the evidence that disbursements to mortgage brokers and loan processors are customary, the reasonable inference that Sweet—not Arneson—was the Trust's representative primarily involved in working with Flynn on the loan, and the absence of any testimony from Sweet, Flynn, or any representative from Columbia or MFE as to the services those companies did or did not provide, the trial court did not err by determining that the Trust failed to show that the fees disbursed to Columbia and MFE constituted usurious interest as opposed to a reasonable fee for services actually performed for the Trust. Cf. Sparkman & McLean Income Fund v. Wald, 10 Wn. App. 765, 768-69, 520 P.2d 173 (1974) (holding that the trial court did not err in characterizing a loan fee as interest where the borrower presented expert testimony that the fee's recipient "performed no services other than those for the

13

benefit of the lender which are normally incident to such a transaction" and there was "no evidence" that the borrower approved the fee); <u>Aetna Fin. Co. v. Darwin</u>, 38 Wn. App. 921, 926 n.5, 691 P.2d 581 (1984) (though not dispositive, evidence that services were obtained by payment to a third party, as opposed to the lender, "is evidence the services were actually provided to the borrower and were reasonably worth the amount charged").

The trial court also did not err in determining, with regard to the $8,742.83 disbursement to L80 Collections, that "[t]he Trust did not carry its burden of establishing that the disbursement to L80 Collections represents a fee to the lender or interest." In addition to the evidence already described, Nordlund testified that he did not receive any proceeds from L80 Collections and did not know what its involvement was with the loan or why it would have received a disbursement. Koval testified that it was "normal" to make disbursements from escrow to third parties for debts that had not yet been reduced to judgment. Also, L80 Collections was listed in the settlement statement together with other creditors of Sweet's who were paid from the proceeds of the Nordlund loan. In addition, Arneson herself testified that the proceeds of the Nordlund loan were used in part to pay Sweet's personal debts. A reasonable inference from the evidence is that L80 Collections was another of Sweet's creditors who was paid from the proceeds of the loan. The trial court did not err in determining that the Trust failed to show otherwise.

The Trust contends that the trial court's determinations were in error because, it asserts, "the burden to prove that specific loan fees were incurred for

some loan related service is on the lender – not the borrower." Br. of Appellant at 50. The Trust is incorrect: "[T]he burden of proof is upon him who asserts that the transaction is usurious." McCall v. Smith, 184 Wash. 615, 622, 52 P.2d 338 (1935). And while the Trust cites Sparkman & McLean and McGovern v. Smith, 59 Wn. App. 721, 801 P.2d 250 (1990), in support of its assertion, neither of these cases holds that the burden lies with the lender to show that a particular fee was in fact incurred for a loan-related service. See Sparkman & McLean, 10 Wn. App. at 769 (holding that trial court's characterization of fee as interest was supported by substantial evidence and, thus, would not be disturbed on appeal); McGovern, 59 Wn. App. at 730 (where loan is "usurious on its face,"[11] burden of establishing *exemption* from usury laws lies with lender).

The Trust also argues that the trial court erred in its characterization of the above loan disbursements because there was evidence that the escrow instructions were "submitted to escrow by Mr. Nordlund's agent, Mark Flynn, on Mr. Nordlund's behalf"; Koval testified that she did not receive any documentation to support the disbursements to Columbia, MFE, and L80 Collections even though she requested it; the fact that Arneson signed the settlement statement reflecting these disbursements was "of limited relevance"; and there was "no

---

[11] The Trust asserts throughout its reply brief that the Nordlund loan was usurious on its face. But the Trust does not support this assertion with any analysis whatsoever, much less explain why the loan was usurious on its face given that the interest rate shown on the Note is 12 percent per annum, with a default rate of 18 percent per annum "OR the maximum rate allowed by law, whichever is less." Cf. Aetna, 38 Wn. App. at 923 (loan of $51,000 at 20.58 percent interest was "usurious on its face" because "each of the elements of usury appears on the face of the loan contract"). The Trust's conclusory assertion, made for the first time in its reply brief, does not warrant consideration. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument").

evidence that the Trust ever approved [the] loan fees" beyond the signed settlement statement. Br. of Appellant at 50-51. But in a substantial evidence review, "[w]e . . . defer to the trial court on issues of conflicting evidence, witness credibility, *and persuasiveness of the evidence*." Scott's Excavating, 176 Wn. App. at 342 (emphasis added). The Trust asks us to reweigh the evidence, which we will not do.

IV

The Trust next contends that the trial court "erred in entering judgment without a thorough and comprehensive accounting of the loan." Br. of Appellant at 52. This is so, the Trust asserts, because the amount of the judgment "necessarily includes loan fee disbursement that can only be characterized as interest as argued above." Br. of Appellant at 53. In other words, the Trust's challenge to the trial court's judgment is premised on the Trust's assertion that the trial court erred in its characterization of the loan fees discussed in the previous section. Having rejected that assertion, we also reject the Trust's contention that the trial court's judgment was in error.

V

The Trust next avers that "[t]he trial court dismissed the Trust's rescission claim on summary judgment." Br. of Appellant at 23. The Trust argues that because Arneson timely rescinded the loan, "[t]he trial court's dismissal of the Trust's rescission claim on summary judgment was erroneous and should be reversed." Br. of Appellant at 38.

The Trust's argument misstates the record. The trial court did not

16

summarily dismiss any rescission claim. Instead, upon remand after the Trust's second appeal, the trial court expressly declined to reach the merits of the Trust's rescission claim in light of its earlier determination that the Trust was liable under the Note—a determination whereby the trial court necessarily rejected the Trust's argument that it rescinded the Note.[12] Because the trial court did not revisit this determination on remand, neither it—nor the Trust's rescission theory—is properly before us in this appeal.

As the Trust itself has recognized throughout this litigation, under the law of the case doctrine, "[q]uestions determined on appeal, *or which might have been determined had they been presented*, will not again be considered on a subsequent appeal in the same case, if there is no substantial change in the evidence at a second determination of the cause." Clark v. Fowler, 61 Wn.2d 211, 213, 377 P.2d 998 (1963) (emphasis added).

RAP 2.5(c) makes the law of the case doctrine discretionary. State v. Mannhalt, 68 Wn. App. 757, 762-63, 845 P.2d 1023 (1992). That rule provides, as relevant here, "If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case." RAP 2.5(c)(1). RAP 2.5(c)(1) does not, however, "revive automatically every issue or decision

---

[12] The Trust claims that the trial court did not adjudicate the Trust's rescission theory in 2017 because the trial court's order "makes no reference to the Trust's rescission claim whatsoever." Br. of Appellant at 28. But by concluding that the Trust was liable on the Note as a matter of law, the trial court necessarily rejected the Trust's argument that it rescinded the Note, which the Trust briefed to the trial court before entry of the order.

which was not raised in an earlier appeal." State v. Barberio, 121 Wn.2d 48, 50, 846 P.2d 519 (1993). "*Only if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question.*" Barberio, 121 Wn.2d at 50 (emphasis added).

Though not cited by the parties, Barberio is instructive here. In Barberio, the defendant was convicted of two offenses and received an exceptional sentence for each. 121 Wn.2d at 49. The defendant appealed both convictions, but he did not assign error to the resulting sentences. Barberio, 121 Wn.2d at 49. We reversed one of the convictions and remanded for resentencing. Barberio, 121 Wn.2d at 49.

On remand, the defendant argued that the elimination of one of the convictions mandated a proportionate reduction in the sentence for the other. Barberio, 121 Wn.2d at 49-50. The trial court declined to revisit the sentence for the remaining conviction, observing that "'nothing has changed with regard to [the remaining count] since the matter was sentenced before'" and "'[t]here's nothing in the Court of Appeals decision that I see that impacts [the remaining count].'" Barberio, 121 Wn.2d at 51-52. The defendant again appealed, and we dismissed the appeal because the defendant had not challenged his sentences in his first appeal. Barberio, 121 Wn.2d at 50.

Our Supreme Court affirmed. Barberio, 121 Wn.2d at 52. In doing so, it explained that because the trial court made clear that it "was not considering anew its prior exceptional sentence as to the count which was affirmed," the trial court did not exercise independent judgment on remand as to the sentencing

issue. Barberio, 121 Wn.2d at 51. The Supreme Court also observed that the sentencing issue "was a clear and obvious issue which could have been decided in . . . the first appeal," and because the defendant had not raised it in his first appeal, "[i]nstead of a timely and orderly proceeding to determine the matter on the merits," the respondent, the Court of Appeals, the Supreme Court, and their respective staff "have had to deal with a procedural morass, all of which could have been avoided had the matter been raised when it should have been in the first appeal." Barberio, 121 Wn.2d at 52.

Here, as in Barberio, the issue of the Trust's liability on the Note and, thus, the issue of whether the Trust effectively rescinded the Note, were clear and obvious issues that could have been decided in the Trust's second appeal had the Trust timely raised them. But the Trust did not. To the contrary, the Trust represented in its second appeal that it "never disputed the existence of a debt" and, in attempting to quell confusion as to the Trust's position with regard to the existence of a debt, the Trust represented without reservation that rescission had not been pleaded.

Furthermore, as with our opinion in the Barberio defendant's first appeal, our opinion in Arneson II did not change anything about the trial court's determination that the Trust was liable under the Note as a matter of law: Although we reversed the trial court's dismissal of the Trust's assumpsit and statutory usury claims, we did not address, much less reverse, the trial court's determination of the Trust's liability under the Note.

Also, as in Barberio, the trial court did not exercise independent judgment

19

on remand as to the issue the Trust now attempts to raise. Instead, the trial court made clear, as did the trial court in <u>Barberio</u>, that it would not be revisiting the matter, relying on judicial estoppel. To this end, as Nordlund points out, the Trust does not challenge the trial court's application of judicial estoppel.[13] Hence, the Trust does not show any abuse of discretion in the trial court's refusal to revisit its liability determination. <u>Cf.</u> <u>Harris v. Fortin</u>, 183 Wn. App. 522, 526-27, 333 P.3d 556 (2014) (trial court's decision to apply judicial estoppel is reviewed for abuse of discretion).

Finally, as in <u>Barberio</u>, the Trust's decision not to challenge the trial court's liability determination in its second appeal has caused Nordlund, the trial court, and this court to have to deal with a procedural morass that could have been avoided had the Trust timely raised the issue. And, the Trust, whose briefing on appeal leaves several questions unanswered with regard to TILA's applicability and Arneson's compliance therewith,[14] shows neither that the trial court clearly erred in rejecting the Trust's rescission theory nor that declining to review the matter at this late stage would work a manifest injustice on the Trust with no corresponding injustice to Nordlund. <u>Cf.</u> <u>State v. Worl</u>, 129 Wn.2d 416, 424, 918

---

[13] The Trust attempts to do so for the first time in its reply brief, but as discussed, we do not consider arguments raised for the first time in a reply brief.

[14] For example, the Trust does not address whether Nordlund, who was found by a jury not to be engaged in the business of making loans, qualifies as a "creditor" under TILA's implementing regulations. <u>See</u> 12 C.F.R. § 226.2(a)(17) (defining "creditor"). The Trust also provides no legal analysis to explain how Arneson, who was only one of the Trust's two co-trustees, could effect a rescission on the Trust's behalf. And although the Trust cites 12 C.F.R. § 226.23(a)(2) for the proposition that Arneson properly served the rescission notice by delivering it to Koval, who transmitted it to Flynn, whom the Trust asserts was Nordlund's agent, the Trust cites no authority to support its assertion that such notice complies with the cited regulation, which provides that "[t]o exercise the right to rescind, the consumer shall notify *the creditor*" and that notice is "considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered *to the creditor's designated place of business*." (Emphasis added.)

P.2d 905 (1996) (appellate court may decline to apply law of the case doctrine where earlier decision was clearly erroneous and application of the doctrine "'would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party'" (quoting Greene v. Rothschild, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966))).  For the foregoing reasons, we, like the Supreme Court in Barberio, decline to review the trial court's determination that the Trust was liable on the Note as a matter of law, "[i]n the interest of judicial economy, already too much wasted."  Barberio, 121 Wn.2d at 52.

VI

The Trust next argues that the trial court erred by imposing CR 11 sanctions against it.  We disagree.

CR 11 provides that a party or attorney's signature on a motion constitutes a certification "that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the motion "is well grounded in fact" and "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  CR 11(a).  If a motion is signed in violation of CR 11, "the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction," including reasonable attorney fees and costs incurred because of the filing of the motion.  CR 11(a).

We review a trial court's decision on CR 11 sanctions for abuse of discretion.  Clare v. Telquist McMillen Clare PLLC, 20 Wn. App. 2d 671, 681, 501 P.3d 167 (2021).  "The trial court abuses its discretion when its exercise of

21

discretion is manifestly unreasonable or based on untenable grounds or reasons." Workman v. Klinkenberg, 6 Wn. App. 2d 291, 298, 430 P.3d 716 (2018). In evaluating the trial court's exercise of discretion, we are mindful that the trial court "'has tasted the flavor of the litigation'" and, thus, is best positioned to determine whether sanctions are warranted. Miller v. Badgley, 51 Wn. App. 285, 300, 753 P.2d 530 (1988) (quoting Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C. Cir. 1985)).

Here, the trial court had tenable grounds for imposing CR 11 sanctions. Contrary to the Trust's assertions that the trial court failed to explain its reasoning, the court found that the Trust, through counsel, made "many contradictory statements" in this litigation related to whether it intended to pursue its rescission theory and whether that theory was supported by the evidence. Additionally, the trial court offered the Trust an opportunity to withdraw the Rescission Motion before oral argument, but the Trust elected to proceed despite Nordlund's pending CR 11 sanctions motion describing these contradictory statements. Specifically, as the trial court found and as discussed above, the Trust represented to this court in its second appeal that it never disputed the existence of a debt and that the issue of rescission was not pleaded. The trial court also noted that on remand from Arneson II, the Trust asserted further that there was "no credible evidence adduced to date – either through discovery or trial – to dispute the existence of a 'loan or forbearance.'" These representations and assertions by the Trust, which gave no indication it was reserving with regard to its rescission theory, strongly implied that the Trust did not intend to pursue

rescission. Indeed, as previously discussed, the Trust's statement that rescission was "not plead[ed]" was intended to dispel "Nordlund's confusion as to the Trust's position with regard to the existence of a debt."

Yet when Nordlund moved for summary dismissal of the Trust's statutory usury claim on the basis that it was time barred, the Trust's only response was that it had no liability under the Note because it had rescinded it—contrary to its earlier representations that it was not disputing the existence of a debt. Under the circumstances, the trial court did not abuse its discretion by concluding that the Rescission Motion was not well grounded in fact and was brought "for the improper purpose of promoting gamesmanship and needless litigation."

To be clear, we do not suggest that a party may not plead alternative, inconsistent theories, and CR 8(e)(2) expressly allows a party to "state as many separate claims or defenses as the party has regardless of consistency." But it is one thing to *plead* alternative theories and another to make representations to the court and other parties implying that no evidence actually supports a theory and that it will not be pursued—only to attempt to resuscitate it later.

The Trust argues that CR 11 sanctions were not warranted because (1) the Trust pleaded rescission in its second amended complaint, (2) the trial court's October 2017 order did not adjudicate the Trust's rescission claim, and (3) because we reversed the October 2017 order in Arneson II, the order "had no precedential or estoppel value as to the Trust's pursuit of its rescission claim going forward." Br. of Appellant at 41. These arguments misunderstand the basis of the trial court's sanctions award, i.e., the Trust's *conflicting*

23

*representations about* what it pleaded and whether it intended to pursue its rescission claim. Whether, in the absence of those representations, the Trust actually pleaded rescission or the trial court adjudicated the claim is irrelevant. Similarly, the trial court's basis for imposing sanctions was not the estoppel effect of its October 2017 order (the relevant part of which was *not* reversed by Arneson II), but the estoppel effect of the Trust's own representations throughout this litigation.

The Trust also complains that the trial court "failed to inquire of counsel what efforts were made to investigat[e] the facts and law." Br. of Appellant at 41. But the Trust does not explain what any such inquiry might have revealed in the way of justification for counsel's contradictory representations, much less persuade us that any such inquiry is necessary where the basis for sanctions is a party's contradictory representations, through counsel, about whether it intends to pursue a particular theory.

Finally, the Trust contends that the CR 11 sanctions must be reversed because the trial court "offered no warning as to the consequences it was considering if the Trust moved forward" with the Rescission Motion instead of withdrawing it. Br. of Appellant at 42. But the hearing at which the trial court considered the Rescission Motion was the same hearing at which the trial court would also consider Nordlund's motion for CR 11 sanctions, which at that point had been fully briefed and wherein Nordlund expressly requested sanctions in the form of costs and fees incurred as a result of the Rescission Motion. The Trust does not establish that any additional "warning" was required under the

circumstances.

VII

Both parties request an award of attorney fees on appeal. Because the Trust is not the prevailing party on appeal, we deny its request for fees on appeal.

Nordlund argues that this court should award him fees because the Trust's appeal is "intransigent and frivolous." Br. of Resp't at 65. "'An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of success.'" Legal v. Monroe Sch. Dist., 4 Wn. App. 2d 776, 788, 423 P.3d 915 (2018) (internal quotation marks omitted) (quoting West v. Thurston County, 169 Wn. App. 862, 868, 282 P.3d 1150 (2012)). RAP 18.9(a) vests this court with discretion to award attorney fees as a sanction for filing a frivolous appeal. Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Intransigence may be demonstrated by "'litigious behavior, bringing excessive motions, or discovery abuses'" and has served as an independent basis for awarding fees on appeal. In re Marriage of Larson, 178 Wn. App. 133, 146, 313 P.3d 1228 (2013) (quoting In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002)).

Although we reject the Trust's claims on appeal, we are unpersuaded that the Trust's appeal is frivolous or intransigent. Accordingly, we decline to award fees on these bases.

That said, with regard to the Trust's challenge to the CR 11 sanctions award, it would defeat the purpose of that award to force Nordlund to pay

25

additional litigation expenses to defend the award on appeal.  See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 356, 858 P.2d 1054 (1993) (fees awarded as sanctions "should insure that the wrongdoer does not profit from the wrong").  Accordingly, subject to his compliance with RAP 18.1, we grant Nordlund's request for fees on appeal solely to the extent they were incurred in defending the trial court's CR 11 sanctions award.  Cf. Andren v. Dake, 14 Wn. App. 2d 296, 322, 472 P.3d 1013 (2020) (awarding appellate fees to party who successfully defended sanctions award on appeal "[t]o avoid incentivizing sanctioned parties from appealing in order to exhaust the benefit of any sanctions award granted by the trial court to their aggrieved opponent").

Affirmed.

Dwyer, J.

WE CONCUR:

Birk, J.          Coburn, J.